

The New York Times Building
620 Eighth Avenue, 38th Floor
New York, NY 10018
Telephone: 646.341.6530
Facsimile: 646.341.6537

February 8, 2017

**VIA CM/ECF**

The Honorable Katharine H. Parker
United States Magistrate Judge
United States Courthouse, 500 Pearl Street
New York, NY 10007

    Re: *Office Depot, Inc. et al. v. Brent Roberts*, Civil Action No. 1:16-cv-4234

Dear Judge Parker:

  In accordance with the Court's January 30, 2017 Order (Docket Entry ("DE-") 74), Plaintiffs Office Depot, Inc. and OfficeMax Incorporated ("Plaintiffs" or "Office Depot/OfficeMax") submit this letter in response to the second attempt by Defendant Brent Roberts ("Defendant" or "Roberts") to compel cost and commission information that (i) does not exist, (ii) has already been provided or (iii) is not proportional to the needs of the case. See DE-76 ("Defendant's Letter").

  For the reasons that Plaintiffs have already explained – both by letter to the Court and during the January 27, 2017 Hearing (the "Hearing") – the relief sought in Defendant's Letter should again be denied, but this time with prejudice.

**I. Background Regarding Defendant's Request for "True Cost" Information**

  To be clear, Defendant inappropriately claims that Plaintiffs have "asserted that it would be burdensome to provide any compensation documents prior to 2014" that relate to Defendant. Id. at 2. This is patently false. In the course of this litigation, Plaintiffs have produced Defendant's:

  (a) applicable commission plans from 2010 through 2016;
  (b) wage and pay statements from 2005 through 2016, which include Defendant's commission payments through his resignation; and
  (c) Form W-2s from 2005 through 2015.

In addition, Plaintiffs have produced emails and spreadsheets where Defendant's supervisor asked him to review the propriety of his commission payments *before* they were paid to him. See, e.g., Tab 1 (Defendant responding to his supervisor that his forthcoming commission payout, being made just days before his resignation to work for a competitor, "seems accurate" and "impressive").

  The information Defendant really seeks to compel consists of documents reflecting what he calls the "true cost" paid by Plaintiffs for products that were specifically sold by Defendant and with respect to which Defendant was paid commissions. See DE-65 at 2 (Defendant seeking to compel this information in section titled "Documents concerning Plaintiffs' true costs on sales as

February 8, 2017              Constangy, Brooks, Smith & Prophete, LLP
Page 2

well as the cost figures used to calculate Mr. Roberts's commissions and compensation (Request No. 44)"); see also DE-76 at 3. Indeed, the specific document request upon which Defendant seeks the Court to compel the production of further materials states as follows:

> REQUEST NO. 44.
>
> Documents sufficient to identify each and every product purchased by each and every Roberts Assigned Customer and, for each such product purchased:
>
>     a.    The type and brand of such product, including the SKU number and/or any other product identification number used by [Plaintiffs];
>     b.    The date the product was purchased and the date it was shipped to the Assigned Customer;
>     c.    The price charged to the Assigned Customer for such product;
>     d.    The cost of such product used for purposes of calculating Roberts's compensation, bonus, goals and/or commissions;
>     e.    The gross profit and the gross profit dollars on such sale (as those terms were used for purposes of calculating Roberts's compensation, bonus, goals and/or commissions);
>     f.    Any and all loads charged by [Plaintiffs] in the calculation of Roberts's compensation, bonus, goals and/or commissions;
>     g.    The actual price that [Plaintiffs] paid to acquire that product from a wholesaler, vendor, supplier or manufacturer;
>     h.    To the extent the actual price set forth in "g" above was different from the cost of such product used for purposes of calculating Roberts's compensation, bonus, goals and/or commissions, documents sufficient to identify and describe such difference and the reasons for such difference; and
>     i.    Any products that were returned or for which the Assigned Customer otherwise received a credit or rebate and the amount and date of any such credit or rebate.

See Tab 2 hereto.[1] Defendant's definition of "Assigned Customers" is defined as follows in the requests:

> 3. "Assigned Customers" when used in reference to Roberts means each and every present, former and prospective customer (1) that [Plaintiffs] ever assigned to Roberts, (2) for which Roberts was paid commissions or bonuses, (3) that Roberts called upon, solicited or serviced on behalf of [Plaintiffs], or (4) which appeared on any listing of customers for which Roberts was at any time responsible.

Id.

---

[1] The requests to Office Depot, Inc. and OfficeMax Incorporated are substantively identical and are treated collectively herein as a result. Both are attached at Tab 2 for the Court's convenience.

February 8, 2017                     Constangy, Brooks, Smith & Prophete, LLP
Page 3

      Aside from the obvious issues relating to the scope of this request, as Plaintiffs have explained (and as is again set forth in Section III, infra), the detailed, individualized information sought by Roberts does not exist.  Moreover, Defendant did not in the request or initial letter motion to compel seek generic information about costs that do not tie back to his own sales or commissions.  To the extent he argues otherwise now, such information would not be relevant to his claims or discovery requests and completely disproportionate to the needs of this case.

**II.**     **Defendant's Letter Fails to Provide Any Further Rationale for Why the Court Should Reverse Its Earlier Denial of Defendant's Motion to Compel**

      During the Hearing, the Court denied Defendant's request to compel further information about the so-called "true cost" of information that relates to Defendant, but allowed Defendant to seek reconsideration of this ruling if he could provide the following specific information:

> THE COURT: [W]ith respect to this true cost request, I'm going to deny motion -- defendant's motion to compel additional documents regarding true costs. *If you would like to narrow what you're seeking and can explain the relevance by reference to the specific commission agreements and describe why what you're seeking is proportional to the counterclaim and needed, then I will reconsider.* But based on what you've provided and based on what plaintiff has said, I don't believe that this information is necessarily relevant or proportional to what is needed with respect to this counterclaim.
>
> MR. McLAUGHLIN: I'll be happy to supplement, Your Honor, because it's in our view critical to the counterclaim because we can't -- there's no way for us to test whether the commissions were paid in accordance with the plan without the backup information. We are -- we have to just take their final numbers.
>
> THE COURT: Well, then you need to make a more targeted re-application that explains in more detail why this is -- is necessary because, as I said, I see it as two different issues. *The threshold issue is, is there[] sufficient information about . . . how commissions were calculated. There's no need to go beyond that.*

Tab 3 at p. 17:25-18:23 (emphasis added).

      The relief sought in Defendant's Letter should be denied because Defendant simply cannot not do what the Court directed, as he already has all of the relevant information "about . . . how commissions were calculated."  Id.  Instead of addressing the Court's concern, Defendant's Letter *argues* Defendant's legal theories that different metrics *should* have been used to calculate his commissions, but does not explain why the commission plans require further information for this theory to be evaluated (because they do not).

February 8, 2017                                          Constangy, Brooks, Smith & Prophete, LLP
Page 4

### III. No Further "True Cost" Documents Responsive to Defendant's Request Exist

Even if Defendant had shown some great need or compelling rationale for the relief he seeks, as Plaintiffs' corporate designee explained to Defense counsel and Plaintiffs have explained to the Court, the "true cost" information that Roberts seeks does not exist and cannot be compiled. See DE-67 at 1, Section (1). Defendant takes a *single* line out of context from the testimony of Plaintiffs' corporate designee on this cost information and its existence to try and support his position (see DE-76 at 3), but the deponent's full testimony on direct examination by Defense counsel is unequivocal:

> Q. The company keeps records of its historical costs with vendors for a period of time, doesn't it?
> A. Again, you're asking a merchandising question. I'm responsible for total delivered cost. Pertaining to Brent Roberts, is that your question?
> Q. I can limit it to Brent Roberts.
> A. No, they do not then.
> Q. Who does not?
> A. We don't have -- I don't have a historic cost for Brent Roberts.
> Q. Whether you have it for Brent Roberts specifically -- well, how do you know that you don't have cost information for products that Brent Roberts sold historically?
> A. What I shared with you is current like formulas today. I do not have historical costs for Brent Roberts or what he sold to his customers.
> Q. But you have --
> A. Doesn't exist.

See Tab 4 hereto at p. 75:19-76:18.

This witness further testified on cross-examination that, while the information sought did not exist, he produced the best information available in order for Defendant to evaluate any supposedly improper "load" added to a what he describes as a "true cost":

> Q. Mr. Cox, can you explain whether you can give us a document that shows the difference between TDC and underlying cost information that ties back to Brent Roberts that was requested by defense counsel?
> A. You mind repeating the question one more time.
> Q. Sure. Defense counsel is asking us for information that will allow him to tell the delta essentially between TDC and I guess product costs tying back to Brent Roberts.
> A. Purchase order costs?
> Q. Maybe, whatever they're asking. We can start with purchase order costs. Is that something that you can provide or that the company can provide?
> MR. McLAUGHLIN: Objection.
> A. No.
> Q. Can you explain?
> A. So you're asking me to produce a document that ties all the sales by the commerce assigned to Brent Roberts at the ship to level at a certain place

February 8, 2017                                    Constangy, Brooks, Smith & Prophete, LLP
Page 5

> Q. in time, out of a certain DC, at a certain SKU vendor, and that does not exist. It's impossible. It's impossible to produce.
> Q. You were in fact asked to provide this documentation so it could be provided to defense counsel, correct?
> A. Correct.
> Q. And your response is that it isn't possible to do?
> A. It doesn't exist.
> Q. Okay. Can you do it for all sales reps, tying back to the sales reps?
> A. No, it doesn't. You're asking at the transactional level at a certain point in time for a certain end user invoice, tied to a certain sales associate out of a certain DC what that cost was at that product SKU level and that, that does not exist.
> Q. You produced an SGA chart in response to my request, correct?
> A. Yes.
> Q. Can you explain why you produced the SGA chart?
> A. This is the best representation of like -- of a current TDC calculation today, which is total delivered cost, which is the cost that the sales organization uses to price for prospects and customers.
> Q. So that's the closest thing that you can give us that would help divine a delta if we were going to try and do that?
> A. Again, it's not -- in today's transaction, yeah, today for product.

Id. at p. 117:7-119:19.

In short, Plaintiffs produced the information that does exist and went beyond the request in order to provide the best information that could be used to answer Defense counsel's questions. There is nothing further to compel relating to the supposed "true cost" even if the Court decided to reverse its earlier ruling – which it should not, for all of the reasons herein.

**IV.    Defendant's General Request for Further Testimony by a Corporate Deponent Made at the Hearing Should be Denied with Prejudice as Waived, and the Limited Request in Defendant's Letter Should Similarly be Denied**

Despite not having specified a need to continue Plaintiffs' corporate witness depositions in Defendant's original letter motion to compel (see DE-65), at close of the Hearing, Defendant's counsel made a throw-in request to continue such depositions:

> MR. McLAUGHLIN: Can I add just because we didn't address it specifically but it was included in my letter motion, I also had issues as I referenced with the deposition deficiencies of the plaintiffs' witnesses and, you know, especially given the light of the documents deficiencies that I have identified, so I don't want to foreclose that. And I kept time open on my deposition.
> THE COURT: Yes. You can put that in the letter.
> MR. McLAUGHLIN: Thank you.

February 8, 2017                                         Constangy, Brooks, Smith & Prophete, LLP
Page 6

<u>Tab 3</u> at p. 95:3-11.  Defendant's Letter has shown such request be just that – a throw-in – as it provides no analysis or substance as to why Defendant's previous opportunity to depose these witnesses was insufficient.

      Defendant should not be allowed to keep depositions open without making a specific and meaningful showing, and he did not do so in the one paragraph where he briefly addressed this issue.  <u>See</u> DE-76 at 3-4 (last paragraph starting on page 3).  This is because there is nothing meaningful left to ask that could not have been asked before. To the extent Defendant could even think of something to ask, Defendant's Letter was his opportunity to explain that to the Court, and he did not provide the Court with any specific reasons (such as by identifying incomplete or missing testimony) to grant such relief.[2]  The requested relief should be denied.

      Respectfully submitted this 8th day of February, 2017,

                        Plaintiffs/Counterclaim-Defendants Office Depot, Inc. and OfficeMax Incorporated,

                        By their counsel,

                        */s/ David C. Kurtz*
                        David C. Kurtz
                        Naveen Kabir
                        CONSTANGY, BROOKS, SMITH & PROPHETE LLP
                        The New York Times Building
                        620 Eighth Avenue, 38th Floor
                        New York, NY 10018
                        Tel: 646-341-6530
                        Fax: 646-341-6537
                        Email:  dkurtz@constangy.com
                                    nkabir@constangy.com

                        Christopher M. Pardo (*admitted pro hac vice*)
                        CONSTANGY, BROOKS, SMITH & PROPHETE LLP
                        535 Boylston Street, Suite 902
                        Boston, MA 02116
                        Tel: 617-849-7884
                        Fax: 617-849-7874
                        Email:  cpardo@constangy.com

---

[2]     See, e.g., <u>Lingo Corp. v. Topix, Inc.</u>, 218 F.R.D. 385, 387 (S.D.N.Y. 2003) (denying request to conduct additional discovery as untimely where plaintiff had already requested to do so once in the litigation); <u>Colletti v. Fagin</u>, No. 90 Civ. 4591, 1999 WL 126461, at *3 (S.D.N.Y. Mar. 10, 1999) (denying request to "reopen discovery on the eve of trial" where party had prior opportunity to conduct the same discovery and "chose not to do so").

February 8, 2017                                                                 Constangy, Brooks, Smith & Prophete, LLP
Page 7

## CERTIFICATE OF SERVICE

     I, David C. Kurtz, hereby certify that, on this 8th day of February, 2017, a true and correct copy of the foregoing document was electronically filed through the Court's CM/ECF system and served upon counsel for the Defendant through the same.

                                           */s/ David C. Kurtz*
                                           David C. Kurtz