

The New York Times Building
620 Eighth Avenue, 38th Floor
New York, NY 10018
Telephone: 646.341.6530
Facsimile: 646.341.6537

February 27, 2017

<u>VIA CM/ECF</u>

The Honorable Katharine H. Parker
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re: <u>*Office Depot, Inc. et al. v. Brent Roberts*, Civil Action No. 1:16-cv-4234</u>

Dear Judge Parker:

  Plaintiffs Office Depot, Inc. and OfficeMax Incorporated ("Plaintiffs") submit this letter motion per the Court's direction during the January 27, 2017 hearing ("Hearing") relating to Plaintiffs' request to obtain information about Defendant Brent Roberts' ("Roberts") computer.

**(A)**  <u>Relevant Background</u>

  At the Hearing, the Court allowed Plaintiffs to depose the forensic examiner that deleted information from Roberts' computer, focusing on two questions: (a) whether the examiner could explain, with reasonable certainty, the meaning of the "Last Accessed" dates on files containing Plaintiffs' alleged confidential information, and (b) whether any information exists on the computer relating to the possible misappropriation of such files. <u>See</u> Tab 1 at 83:18-87:6. The Court instructed Plaintiffs to advise the Court if they needed further relief following such testimony. <u>Id.</u> at 87:7-15. Per this direction, Plaintiffs deposed John Clingerman, of D4, LLC ("D4"), and, based on his testimony, seek further relief from the Court as is set forth herein.

**(B)**  <u>Request for Narrow and Proportional Further Relief</u>

  The deposition of D4 confirmed that additional discovery is necessary for Plaintiffs to fairly prosecute their claims and defend against Roberts' counterclaims. This discovery -- which is narrowly tailored and directly proportional to the needs of this case -- is as follows:

  (1) Production of the forensic image of Roberts' computer made by D4 so that it can be independently analyzed by Plaintiffs' forensic expert (as, among other things, D4 admits it did not fully analyze the image as it would normally do to determine the most likely cause of the changes to the "Last Accessed" dates), which will provide directly relevant direct and circumstantial evidence in this case; and

  (2) Production of Roberts' computer (and any subsequent computer, if he changed devices) for imaging/analysis by Plaintiffs' expert, given that D4 (i) admitted it did not delete *all* of Plaintiffs' information from Roberts' computer as had previously been represented to the Court and (ii) testified that Roberts in fact had an external data storage device connected to his computer during the time at issue.

Alabama California Colorado Florida Georgia Illinois Massachusetts Missouri
New Jersey New York North Carolina South Carolina Tennessee Texas Virginia Wisconsin

February 27, 2017            Constangy, Brooks, Smith & Prophete, LLP
Page 2

### (i) Production of the February/March Forensic Image

Despite providing a canned response on cross-examination as to whether he could "predict with some reasonable certainty" what caused the "Last Accessed" dates to change, D4 admitted that, based on the limited scope of work for which it was first engaged and limited further investigation conducted in advance of the deposition, it cannot provide the quality of analysis that it would typically provide in order to so "reasonably" answer such questions:

> Q. [I]n between [Tab 3 at Rows] 615443 and 615444, there's an eight minute gap in last access. Can you tell me why there's an eight minute gap there?
> A. No.
>
> ***
>
> Q. . . . . So, if I was trying to answer the question that I just asked you, would I have to review the forensic image of the computer itself?
> A. Yes. There are certainly more pieces of information. You've got a whole hard drive that we're not looking at here.

Tab 2 at 71:21-25, 73:19-25; see also Tab 3 (referenced therein). D4 also admitted that based on the limitations of its examination, it could not rule out whether these files were copied, printed, "dragged and dropped" into an email or even uploaded to the internet or an external drive:

> Q. So, to be clear, you've done further independent analysis as it relates to these files in preparation for today, correct?
> A. Yes.
> Q. And you still cannot tell me what the reason is for that last access date?
> MR. MCLAUGHLIN: Objection.
> A. No. I can only tell you about all of the possibilities.
> Q. Okay. And those are the possibilities that we went over?
> A. Correct.

Tab 2 at 100:2-14; see also id. at 87:21-91:3 (going through just some of these possibilities).

Despite D4's unfettered access to the image *for a year*, the witness blamed the changes to "Last Accessed" dates on "some system event" that *may* have occurred, **but admitted he could not determine what such a "system event" might have been because he had not done a thorough enough analysis**. See Tab 2 at 111:22-114:19 (explaining D4 would have to "perform more forensic analysis" to explain what such a supposed "system event" might have been).[1]

---

[1] The witness also testified that "of course" the quality of D4's analysis would be impacted by the thoroughness of the investigation, but was instructed not to answer any further questions about this topic after making these admissions. Id. at 17:9-19:14. The witness was also not permitted by counsel to testify about his own article analyzing what makes a forensic investigation sound, but admits he did not follow that protocol here, showing the unreliability of his opinions. Id. at 114:22-116:20; Tab 4 (explaining, *inter alia*, that "changes to date and time stamps or inadvertently overwriting what otherwise would have been recoverable deleted data [may have] contained the 'smoking gun' piece of evidence that would have won a lawsuit"). The witness also noted that Roberts had not retained D4, but counsel refused to allow testimony about (a) who actually retained the company (whether Roberts' or W.B. Mason's counsel), (2) whether it had previously been retained by Roberts' or W.B. Mason's counsel (which could show a potential bias), or (3) D4's compensation. See Tab 2 at 7:7-8:21, 8:23-12:4.

February 27, 2017  Constangy, Brooks, Smith & Prophete, LLP
Page 3

In addition, D4 admitted that its review of Roberts' computer evidenced that an external document storage device -- a memory card reader known as a "63-in-1" -- was attached to Roberts' iMac during the days leading to his resignation and prior to the forensic vendor taking the information off the machine. See Tab 2 at 122:2-130:20. This device was apparently capable of large scale data copying, which is a possibility D4 had not fully evaluated given its limited review of the computer. Id.; see also id. at 136:13-138:19. D4 also admittedly did not look for backups of the computer other than a limited type of backup that the witness admitted was easy to seek. See id. at 118:7-120:17. Plaintiffs need to evaluate this activity as well.

In short, to truly evaluate the changes in "Last Access" times, Plaintiffs require a copy of the forensic image. According to Plaintiffs' expert, the iMac's operating system contains files that can be mined for information to provide a holistic view of the activity that took place around dates of concern. Such files include log files, internet cache files, application logs, Apple Spotlight directories with text indexes, .plist files (which include user and system configuration information), native security logs, mobile and other backups, software updates and iCloud files. As is noted above, D4 admits it did not conduct such an analysis.

### (ii)   Production of a Current/Updated Forensic Image of Roberts' Computer(s)

Despite his counsel's representations to the Court that Roberts' computer should not be turned over for analysis because, among other things, he believed Roberts "largely just [had work] expense reports that he was printing out" on his home computer (see Tab 5 at 48:16-18), counsel knew or should have known that ***D4 had deleted over 100 work files*** from Roberts' home computer in late February/early March of 2016 -- which was 10 months before such files and metadata were provided to Plaintiffs -- as it was Roberts or counsel who directed the deletion of these documents. Many of these files contained Plaintiffs' highly confidential information.

D4 confirmed that it only deleted the documents that it was directed to delete, but apparently ***those documents did not include numerous spreadsheets and other documents which contain Plaintiffs' confidential information***. Those documents likely still reside on Roberts' computer, and this deposition established that Roberts' months of representations that all of Plaintiffs' information had been deleted from his personal computer were inaccurate (see Tab 2 at 110:12-111:21) -- including, apparently, OfficeMax's contract with a customer that Roberts improperly contacted via LinkedIn following his resignation. Id. at 105:10-106:2; see also Tab 6. It is also possible that Roberts downloaded a work file of all of his contacts, as the timing of such download ***appears to have occurred exactly two minutes following the effective date of resignation*** (at 5:02 pm on February 26, 2016). See Tab 2 at 83:21-87:4; see also Tab 7. Obviously, Roberts downloading his full contacts list is relevant. Similarly, for all of these work files that were not deleted from Roberts' computer, Plaintiffs need to know what happened to them afterwards and the witness could provide no testimony about that. See Tab 2 at 115:2-17.

Finally, although Office Depot sent a preservation letter to counsel for Roberts on June 9, 2016 (see Tab 8), counsel did not provide the computer to D4 at that time; as such, the metadata presumably was not preserved following Mr. Roberts' resignation. To evaluate whether evidence was spoliated, Plaintiffs need access to a current image of the relevant computer(s).

February 27, 2017            Constangy, Brooks, Smith & Prophete, LLP
Page 4

For all of the above reasons, Plaintiffs respectfully request that the Court grant the relief sought in this letter motion.

Respectfully submitted this 27th day of February, 2017,

           Plaintiffs/Counterclaim-Defendants Office Depot, Inc. and OfficeMax Incorporated,

           By their counsel,

           */s/ Christopher M. Pardo*
           Christopher M. Pardo (*admitted pro hac vice*)
           CONSTANGY, BROOKS, SMITH & PROPHETE LLP
           535 Boylston Street, Suite 902
           Boston, MA 02116
           Tel: 617-849-7884
           Fax: 617-849-7874
           Email: cpardo@constangy.com

           David C. Kurtz
           Naveen Kabir
           CONSTANGY, BROOKS, SMITH & PROPHETE LLP
           The New York Times Building
           620 Eighth Avenue, 38th Floor
           New York, NY 10018
           Tel: 646-341-6530
           Fax: 646-341-6537
           Email: dkurtz@constangy.com
                   nkabir@constangy.com

## **CERTIFICATE OF SERVICE**

I, Christopher M. Pardo, hereby certify that, on this 27th day of February, 2017, a true and correct copy of the foregoing document was electronically filed through the Court's CM/ECF system and served upon counsel for the Defendant through the same.

           */s/ Christopher M. Pardo*
           Christopher M. Pardo